## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN AMANFO,<br><br>     Plaintiff,<br><br> v.<br><br><br>NTN BUZZTIME, INC., ALLEN WOLFF, MICHAEL GOTTLIEB, RICHARD SIMTOB, and SUSAN MILLER,<br><br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff John Amanfo ("Plaintiff") by and through his undersigned attorneys, brings this action, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by NTN Buzztime, Inc. ("NTN" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning NTN and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against NTN and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with  BIT Merger Sub, Inc. ("Merger Sub") and Brooklyn Immunotherapeutics LLC ("Brooklyn") (the "Proposed Transaction").

2.      On August 12, 2020, the Company entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement") with Brooklyn.  Pursuant to the terms of the Merger Agreement: (i) Merger Sub will merge with and into Brooklyn, with Brooklyn continuing as a wholly-owned subsidiary of NTN; and (ii) the membership interests of Brooklyn will be converted into the right to receive a number of shares of NTN common stock such that former Brooklyn members will own between approximately 94.08% and 96.74% of the outstanding common stock of NTN and NTN's shareholders will own between approximately 5.92% and 3.26% (the "Merger Consideration").

3.      On October 2, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against NTN and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to NTN

shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, the owner of NTN shares.

9.     Defendant NTN is incorporated under the laws of Delaware and has its principal executive offices located at 6965 El Camino Real, Suite 105-Box 517, Carlsbad, California 92009.  The Company's common stock trades on the New York Stock Exchange under the symbol "NTN."

10.     Defendant Allen Wolff ("Wolff") is and has been the Company's Chief Executive Officer and Chairman of the Board at all times during the relevant time period.

11.     Defendant Michael Gottlieb ("Gottlieb") is and has been a director of NTN at all times during the relevant time period.

12.     Defendant Richard Simtob ("Simtob") is and has been a director of NTN at all times during the relevant time period.

13.     Defendant Susan Miller ("Miller") is and has been a director of NTN at all times during the relevant time period.

14.     Defendants Wolff, Gottlieb, Simtob, and Miller are collectively referred to herein as the "Individual Defendants."

15.     The Individual Defendants, along with Defendant NTN, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**<u>Background of the Company</u>**

16.     NTN delivers interactive entertainment and innovative technology that helps its customers acquire, engage and retain its patrons. The Company's tablets, mobile app and technology offer solutions to establishments that have guests who experience dwell time, such as in bars, restaurants, casinos and senior living centers.

**<u>The Company Announces the Proposed Transaction</u>**

17.     On August 13, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

CARLSBAD, Calif. and BROOKLYN, N.Y., Aug. 13, 2020 /PRNewswire/ -- **NTN Buzztime, Inc.** (NYSE American: NTN) and **Brooklyn ImmunoTherapeutics LLC** ("Brooklyn"), a privately-held biopharmaceutical company focused on exploring the role that cytokine-based therapy can have in treating patients with cancer, today announced that the companies have entered into a definitive merger agreement. If approved by the stockholders of NTN Buzztime and the beneficial holders of the Class A membership interests of Brooklyn, Brooklyn will merge with a wholly-owned subsidiary of NTN

4

Buzztime in an all-stock transaction. Following closing, which the parties expect will occur in the fourth quarter of 2020, the combined company will continue under the *Brooklyn ImmunoTherapeutics* name and will focus on the advancement of Brooklyn's program to further develop its cytokine-based drug for the treatment of various cancers.

Brooklyn's chief executive officer Ron Guido, MS, MS Pharm. Med., stated, "We are pleased to reach an agreement with NTN Buzztime for the proposed merger. This provides us with the opportunity, once the merger is completed, to have our shares traded in the public market and to expand our investor base, which we believe will increase our ability to advance our clinical development program exploring the treatment of certain cancers using derived cytokines. We expect this merger will also enable us to expand our resources and expertise to build momentum in our drug development program. We believe that the merger will provide benefit to both the members of Brooklyn and the stockholders of NTN Buzztime."

Mr. Guido continued: "Brooklyn is focused on exploring the role that IRX-2, a cytokine-based investigational therapy, can have on the immune system in treating patients with cancer. IRX-2's active constituents, namely Interleukin-2 (IL-2) and other key cytokines, are postulated to signal, enhance and restore immune function suppressed by the tumor, thus enabling the immune system to attack cancer cells. Unlike existing recombinant IL-2 therapies, IRX-2 is naturally derived from human blood cells. This may potentially promote better tolerance, broader targeting, and natural molecular conformation leading to greater activity, and permit low physiologic dosing rather than high doses needed in existing IL-2 therapies. Our ongoing development program is specifically investigating use of IRX-2 in neoadjuvant (pre-surgical) and adjuvant (post-operative) treatment for advanced head and neck squamous cell cancer. IRX-2 has received both fast track designation and orphan drug designation from the FDA for this indication. Potential use of our product candidate in other cancer indications is also being evaluated in several investigator-sponsored trials. Finally, we are currently modifying our manufacturing process to allow us to develop additional drugs with a variety of cytokine mixtures to expand our product offerings."

Allen Wolff, chief executive officer of NTN Buzztime, stated, "This transaction reflects the continuing commitment of our management team and board of directors to deliver value to our stockholders. Following a thorough review of strategic alternatives, we determined that the proposed merger with Brooklyn is in the best interest of our stockholders. We are also continuing to explore the sale of substantially all of the assets of our current business to provide additional capital and to allow the combined company to focus exclusively on Brooklyn's business following the merger. While we are in discussions with multiple parties who are interested in purchasing those assets, no definitive agreement has been entered into to date."

**About the Proposed Merger**

Under the merger agreement, immediately following the closing of the merger, the members of Brooklyn collectively will own 94.08% of the outstanding common stock of the combined company and NTN Buzztime stockholders immediately prior to the closing of the merger collectively will own 5.92% of the outstanding common stock of the combined company, which percentages are subject to adjustment based on Brooklyn's cash and cash equivalents and NTN Buzztime's net cash balance at the closing, all as more particularly set forth in the merger agreement.

The merger agreement contains customary representations, warranties and covenants made by NTN Buzztime and Brooklyn, including covenants relating to both parties using their best efforts to cause the transactions contemplated by the merger agreement to be satisfied, covenants regarding obtaining the requisite approvals of NTN Buzztime stockholders and the beneficial holders of the Class A membership interests of Brooklyn, covenants regarding indemnification of directors and officers, and covenants regarding NTN Buzztime's and Brooklyn's conduct of their respective businesses between the date of signing of the merger agreement and the closing. The merger agreement also contains certain termination rights for both NTN Buzztime and Brooklyn, and, in connection with the termination of the merger agreement under specified circumstances, NTN Buzztime and Brooklyn may be required to pay the other party a termination fee.

As a condition to the closing of the merger, Brooklyn has agreed that it will not have less than $10 million in cash and cash equivalents and not more than $750,000 of indebtedness for borrowed money at the closing. Certain beneficial holders of Brooklyn's Class A membership interests have entered into contractual commitments to invest $10 million into Brooklyn immediately prior to the closing of the merger. Further, as a condition to the closing of the merger, NTN has committed that the deficit in its net cash at the closing, as calculated under the merger agreement, will not exceed $3 million.

The combined company, led by Brooklyn's current management team, is expected to be named "*Brooklyn ImmunoTherapeutics, Inc.*" and be headquartered in Brooklyn, NY. After the closing, the combined company is expected to trade on the NYSE American market under a new ticker symbol.

The merger agreement has been unanimously approved by the board of directors of NTN Buzztime, upon the recommendation of its strategic committee, and by the managers of Brooklyn. The NTN Buzztime board of directors have also recommended to NTN Buzztime's stockholders that they vote to approve issuance of the shares to the members of Brooklyn pursuant to the merger agreement, and the managers of Brooklyn have recommended to the beneficial holders of the Class A membership interests of Brooklyn that they approve the merger

agreement and the merger. The transaction is expected to close in the fourth quarter of 2020, subject to approvals by the requisite stockholders of NTN Buzztime and beneficial holders of the Class A membership interests of Brooklyn described above, the continued listing of the combined company on the NYSE American, each of the company's meeting its capitalization or net cash condition, as applicable, and other customary closing conditions.

In connection with the transaction, Maxim Group LLC is serving as the financial advisor for Brooklyn and Newbridge Securities Corporation is serving as the financial advisor to NTN Buzztime. Further, Breakwater Law Group, LLP and Sheppard, Mullin, Richter & Hampton LLP are serving as legal counsel to NTN Buzztime and Akerman LLP is serving as legal counsel to Brooklyn in connection with the transaction.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

18.     On October 2, 2020, the Company authorized the filing of the Registration Statement with the SEC.   The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

19.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding the Company's Financial Projections</u>**

20.     The Registration Statement fails to disclose the financial projections prepared by the Company's management concerning the Proposed Transaction.

21.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed

Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Newbridge's Financial Opinion**

22.     The Registration Statement contains the financial analyses and opinion of Newbridge Securities Corporation ("Newbridge") concerning the Proposed Transaction, but fails to provide material information concerning such.

23.     With respect to Newbridge's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of Brooklyn; (ii) the unlevered free cash flows used in the analysis as well as all underlying line items; and (iii) the basis for Newbridge's application of a perpetuity rate of 1.0%.

24.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

25.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Sales Process**

26.     The Registration Statement contains information concerning the process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

27.     Specifically, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements with potential interested third parties that contained standstill and/or "don't ask, don't waive" provisions.

28.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

29.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

30.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

31.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

32.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

33.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

34.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

35.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the

sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

36.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

37.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

38.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of NTN within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NTN, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

43.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 20, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*

Joshua M. Lifshitz

Email: jml@jlclasslaw.com

**LIFSHITZ LAW FIRM, P.C.**

821 Franklin Avenue, Suite 209

Garden City, New York 11530

Telephone: (516) 493-9780

Facsimile: (516) 280-7376

*Attorneys for Plaintiff*